ROGERS, J.
This is an appeal by the heirs of one T. H. N. McPherson from an adverse judgment on their opposition to the final account of the dative testamentary executor of the succession of George E. Payne.
The decedent was the owner of a valuable sugar plantation in the parish of St. Charles, before and during the Civil War. In March, 1884, he filed suit for $242,000.97 in the Court of Claims against the United States government for the value of supplies and personal property taken, and for the use and occupation of the plantation and the damage thereto, by the federal troops ^during said war.
The attorneys for the claimant in that suit were T. H. N. McPherson, of the city of Washington, and J. E. Wallace, of the city of New Orleans, who were to receive as compensation for their services TVs per cent, and 5 per cent, respectively of any amount recovered.
The suit was tried by said attorneys, and, although the loyalty of Payne was approved by the court, and the evidence submitted was deemed sufficient to establish the claim, it was dismissed for want of jurisdiction on March 14, 1887.
Payne died in 1892, leaving a last will and testament, which was duly probated. McPherson died January 12, 1900, at which time the claim was still uncollected. After McPherson’s death, the executors of Payne employed a lawyer in Washington, named Chaney, to handle the matter, and later on, in May, 1908, entered into a new and independent contract with another Washington lawyer named Edwards, who prosecuted the claim to a successful conclusion. The award was for $21,818.13, which was finally paid in the year 1922. After deducting his agreed fee of 25 per cent, of the amount of the recovery, Edwards remitted the balance of the sum collected, $16,303.60, to the dative testamentary executor of the succession of the claimant.
*180 The executor refused to recognize any liability to the heirs of McPherson, and filed his account accordingly. The heirs opposed the account, claiming $1,630.36, being 7% per cent, of the net recovery, as compensation for McPherson's services, and, as heretofore stated, it is their appeal from the judgment dismissing their opposition which is now before this court for its consideration.
In his will, Payne sets forth that his entire estate consists of this claim against the United States government, and he bequeaths to several legatees the proceeds thereof. The will also contains the following provision:
"My attorneys prosecuting said claim are Mr. J. E. Wallace, of New Orleans, who contracted for ten per cent, upon the amount recovered, less the amount to be paid to the lawyer in Washington, D. C., engaged to prosecute said claim in that city, not to exceed five per cent., or one-half of the whole fee of ten per cent. Mr. T. H. N. McPherson, of Washington, is now my attorney of record in that city, and will be entitled to said five per cent.'upon whatever sum he may recover upon said claim, and also to an additional fee of two and one-half per 'cent., making seven and one-half per cent, in all. Mr. J. E. Wallace, of New Orleans, is, therefore, entitled to only five per cent, of the amount which may be recovered upon said claim.”
Opponents contend (1) that the quoted provision of the will is an acknowledgment of the obligation, and an unconditional promise to pay McPherson 7% per cent, of the amount collected under the claim; and (2) that, if they are incorrect in this position, they are, nevertheless, entitled to recover on a quantum meruit proportionately to the services performed by McPherson up to the time of his death.
It is the contention of the executor, on the other hand, that the language in the will is simply a narrative and not a legacy; that the contract with McPherson was purely upon a contingent basis, dependent upon a recovery by-him, and that, as he was unsuccessful in his efforts, no compensation is due him, or his heirs, therefor; and that his death, necessitating the employment of another lawyer at a greater compensation than he was to receive, caused an actual loss to the estate more than offsetting any benefits conferred by his services.
In our view, the language of the will does not constitute an unconditional promise to pay McPherson and Wallace for their services, hut is merely the testator’s appreciation and statement of the agreement entered into by him with his said attorneys. If there was nothing further before us, we would, unhesitatingly, hold that opponent’s claim was without merit.
However, it is conclusively shown that the record as made up by McPherson and Wallace was used by Edwards in the prosecution of the claim and was the basis of his recovery. All the testimony presented by Edwards to the Court of Claims was that taken by McPherson and Wallace, except some evidence in regard to titles obtained by' Edwards himself. It was through the efforts of the original attorneys in the case that the loyalty of the claimant, which was a condition precedent to the final recovery, was established. It is a matter of' grave doubt, owing to the difficulty of obtaining witnesses, as admitted by Edwards and also by the late Judge Charles E. Eenner, who was at the time the executor of the will, whether the loyalty of Payne, as well as the other facts upon which final recovery was had, could have been established without the record as made up by McPherson and Wallace.
Edwards received $5,45.4.53 for his services in the matter, which' he testified would have been much greater if he had not been able to avail himself of the original proceedings and record. He further testified that his principal work was in getting Congress to give the Court of Claims jurisdiction to try the case; that he used all the evidence procured by McPherson and Wallace, which constituted approximately nine-tenths of all the evidence submitted on the trial of the case, and *182 that without it he did not suppose he would have obtained judgment,, as he understood nearly all the witnesses were dead.
It is not conclusively shown by the record that McPherson abandoned the claim after the Court of Claims had dismissed his proceeding in 1887 for want of jurisdiction. On the contrary, it is fair to presume that he was continually engaged in the effort to induce Congress to confer jurisdiction upon the Court of Claims. It is clear that he was handling the claim in 1892; otherwise, there would have been no occasion for the declaration relative to his services in the will of Payne. The slowness with which the federal machinery works concerning claims against the government is a matter of common knowledge among those interested in such matters. It took Edwards, himself, with the benefit of all the preliminary, work of McPherson and Wallace, from 1906 until 1922 to prosecute the claim to a successful conclusion.
There is no force in the contention of the executor that by the reason of the employment of Edwards the estate was compelled to pay a larger attorney’s fee than if McPherson had lived to conduct the proceedings. It is to be remarked, in the first place, that the contract with Edwards was a separate and independent contract made by the executor without consultation with or notice to the heirs of McPherson, and with a distinct reference to the amounts to be paid to McPherson and Wallace under their contract, as appears in his letter to Edwards of December 6, 1905. In the second place, without the work of McPherson and Wallace, it is patent there would not have been any recovery whatever.
We are of the opinion, therefore, that the opponents are entitled to a reasonable amount for the services rendered by their de eujus. Edwards has testified that McPherson and Wallace took nine-tenths of the evidence used in the trial of the ease. What portion of the evidence was taken by McPherson and what portion by Wallace is not definitely shown, although we feel reasonably safe in assuming that the greater portion was taken by Wallace, who was a resident of the city of New Orleans, where and in the vicinity of which the greater number of witnesses resided.
Opponents contend that under a quantum meruit they should recover 80 per cent, of the value of McPherson’s contract, or $1,-309.09. On the other hand, the executor contends that the recovery should be only one-fourth of the contract fee, or $409.09. In our opinion, taking all the circumstances into consideration, an allowance of $1,000 would be equitable and do full justice to the parties.
For the reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment herein appealed from be reversed and set aside, and that there now be judgment in favor of opponents, maintaining their opposition to the final account herein filed by the dative testamentary executor and ordering that said account be amended by placing opponents thereon as creditors of said succession in the sum of $1,000; all costs of said opposition to be paid by the estate.
Rehearing refused by the WHOLE COURT.
LECHE, J., dissents from refusal to grant a rehearing.